Good morning, your honors, and may it please the court. My name is Nick Lee, and I appear on behalf of petitioner Mr. Esteban Hernandez. I'd like to reserve five minutes for rebuttal. So today we seek reversal of the BIA and IJ's erroneous rulings in relation to three forms of immigration relief, the Convention Against Torture, withholding of removal under the INA, and the State Created Danger Doctrine. First, Hernandez is eligible for relief under CAT because he has shown that it is more likely than not that he would be tortured by his father or his father's associates with the acquiescence of public officials. Agency findings on CAT are reviewed for substantial evidence. While the BIA and IJ are not required to discuss every piece of evidence in their rulings, they must consider all evidence relevant to the possibility of future torture. This is especially so when the petitioner appears pro se because they often lack the legal knowledge necessary to navigate through the morass of immigration law. Where there is any indication that the BIA and IJ did not consider all the evidence before it, general statements that all the evidence was considered will not suffice and the decision is reversible. This is especially true when the agency fails to consider highly probative and potentially dispositive evidence. We identified three sources of such information. First, the BIA neglected Hernandez's credible testimony that he fears that his father or his associates will murder him for exposing their criminal drug, gun and human trafficking operation. Why do you think that the agency ignored that or disregarded it rather than just thinking, okay, he might think that but he doesn't really have a basis to think it? That he may genuinely be scared but that doesn't mean there really is a risk to him. Well, we believe that the holistically between Hernandez's credible testimony, the testimony of Dr. David Shirk and the country conditions reports, that ties together all the logical linkages that are necessary to have the inference that he's more likely to be tortured than not. Specifically, Hernandez was found to be credible and on numerous occasions he's been able to show that he has reason to fear for his life, one of his friends. But so his credible testimony is that he reported his father but if his father doesn't know that he reported him then there's a link that's missing in the chain. So why do we have to assume that just because he's credible that means he's really at risk? Certainly. So he's alleged a number of different ways that his father, his father's associates, would have found out. The first is that his father has ICE agents who are working for him and he believes that they would have found out about his report to the OIG. He also believes that his father's connected to the Venice 13 gang and when he was in prison, one of the prison guards was working with Venice 13 and he believes that the information could have gotten out that way. Additionally, he's written letters to the Mexican government seeking protection federally and he believes that information could have gotten out that way and one of those letters was actually published in a Spanish language newspaper as well. So taken together, this all but guarantees that his father's cartel connections with their wide influence would have found out about his denouncement or his status as an informant. But the agency seems to have thought otherwise and how can we say the agency's definitely wrong in that regard? So when we take a look at the risk of torture, we're looking at the aggregate risk. So we have to take together the risk that each of those various sources of disclosure that I identified would put together the risk that they would have of him finding out. So I believe our position is that under the substantial evidence standard, any reasonable fact finder, based on those facts would have been able to find. So I thought part of your argument was that the IJ didn't consider all of the evidence. Yes, that's true. But when you look at the IJ's decision, I guess it's page 344 of the administrative record or page 13 of the IJ's decision. As I read it, he lists the evidence that he's relying upon. Talks about the Arellano Felix cartel, police department in Tijuana. Yeah, so. Talks, even mentions David Shrink, the expert who testified. Yeah. I mean, he goes through and then he says nonetheless, it doesn't rise to the level of more likely than not that he will experience torture if he returns. Absolutely, so. As Judge Friedland said, what's wrong here? Well, I believe there's two things we should be looking at. The substantial evidence standard, which I already spoke about. And we do, our position is that any reasonable fact finder would be able to find that. But it would also be legal error if he overlooked certain pieces of evidence. The IJ in their decision only very, very briefly touched on the fact that Hernandez's father had Mexican police officers who were in his employ. And we think that's a critical fact because it shows that if he's removed to that country, that they would be able to torture him there with the acquiescence. But the IJ definitely mentions that. I mean, the IJ says fear of his father or his father's associates in the Arellano Felix Cartel or the Tijuana Police Department. Yeah, and so, okay. But I mean, there are other sources of evidence that we feel that they haven't touched on as much. You know, I think, believe that Dr. Shirk's testimony in the discussion of Dr. Shirk's testimony, they find him credible. They discussed his general findings about the country conditions. But Dr. Shirk was actually able to testify that he believed that Hernandez's life would be in danger because he would be considered to be a snitch. Just because the IJ didn't go into depth in the decision doesn't mean the IJ didn't consider Dr. Shirk's testimony. Yes. We often see that. There's a lot of evidence. I don't know how long this particular hearing took place, but, you know, the IJ's only got so much time to produce a decision and tries to capture the essence of what he heard. Absolutely. And I think, ultimately, it goes back to the standard of when there's any indication that they didn't consider all the evidence before it. I think one piece of evidence that's missing that the BIA actually talks about is the disclosure to the newspaper. And I think a publication in the newspaper, which is something that the petitioner had put before the immigration judge ex parte before the decision came down. Didn't the IJ find that Mr. Hernandez had gone back to Mexico, had not been injured by the cartel, and that the cartel was in great part dismantled? Yes. So, as far as the cartel being dismantled, historically, cartels have been- The deal first was the fact that he went back to Mexico and was not tortured. Yes. So, all his disclosures happened after he was already back. So, in that sense, he wouldn't have been targeted while he was in Mexico because he had not yet become an informant, because he had not yet disclosed this information to the newspaper. I didn't really see discussion of this newspaper article as a main point in your brief. Is that now something you're trying to make more of an issue of? Yes. And I do believe it's because there was some confusion about whether or not the document had been entered. But, I mean, again, referring to the standard, if there's any evidence, especially potentially just positive evidence, that could be in the record, then we would have to go back and take another look, I think is the legal standard. Was the article presented to the agency? Yes, it was. It's in the record on page 1531 through 33. Does it have an exhibit number? The exhibit numbers were a little bit unclear to me, so I'm sorry, I can't. The IJ makes reference to news reports. Yeah. So, I believe those- He just doesn't list them. He does say news reports. Yeah. So, I do believe that the news reports he's referring to, Hernandez, of course, submitted lots and lots of information just because he felt that he needed to provide the background that his uncle was potentially the leader of this cartel and the violence. But if you want to take a look at what the BIA has written about it, you can find that on page five of the board decision. So, in that instance, they wrote that the applicant has not met his heavy burden to establish that the motion was granted. The new evidence would likely change the result in this case. And they said that this would be cumulative of information that's already been presented. It was in the motion to reconsider, though. As I understood it, this article wasn't really presented until a motion to reconsider. Did I misunderstand that? So, it was presented as an ex parte before the judge on December 30th, and that was before the decision was actually handed out. So, why is the BIA talking about it as part of the motion to reconsider? So, because it was already in the record, I believe. So, essentially, this article shows that there's a much wider disclosure than just to the agents and just to the LAPD. And then that should lead us to the inference that his father and his father's associates would be able to find him and know that what he did. And so... Oh, this is interesting. So, I think I read the BIA as saying this article was first presented in a motion to reconsider, but you're saying the motion to reconsider was pointing out that this was already in the record but hadn't been considered enough? Yes. So, that happened in multiple motions to reconsider. Afterwards, he's mentioned them, I believe, in all of his motions to reconsider this particular article. And I think it's because it identifies the problem that you folks are discussing, which is how would they know? And how would they know is... But why does the BIA say, then, if the motion were granted, the new evidence wouldn't change the result? Like, it seems like they're treating this article as new evidence. It's unclear exactly why they're treating it as new evidence, because it was submitted before the decision was handed out. Hernandez made a few arguments as to why the evidence should be admitted, and this was after the close of testimony. So, it's unclear why, but this information is very, very crucial to Hernandez's case. Were the motions to reconsider that were filed before the IJ, were they filed after the IJ's decision? Yes, they were filed after the IJ's decision. Then, I thought I understood what the board was saying was that the IJ lacked jurisdiction to consider, because the decision was already in, final. I believe, well, he has a certified mail receipt that... No, I understand that, but technically, so the board then, they were part of the record, and it goes up to the board, and the board says, oh, we're gonna look at these as really as motions to reconsider. Yeah, that's the... Or motion to remand, I'm sorry, motion to remand. That's the board's position, yes, but we believe that the evidence is crucial, because it goes directly to the heart of the issue of how would disclosure have taken place. But so, where in your brief did you argue this? I didn't see any argument that the BIA treated this as a motion to reconsider, but really, it wasn't, or anything about the article as a basis for relief in your brief. Yes, it's not in our brief, Your Honor. I'm not going to say that it is, but we do believe that it's very critical information, especially in light of this issue of whether or not it was disclosed to the cartel. But, I mean, again, the cartels are very large, influential, have a wide reach, and information like this that's out in the public wouldn't necessarily, it would come in front of them. All right, why don't you save some time? You wanted to save five minutes, but you got two minutes and 10 seconds for rebuttal. Thank you, Your Honor. Good morning again, Your Honors. May it please the Court, Matthew George for the Attorney General. Welcome back, Mr. George. Thank you, Your Honor. The standard of review here is substantial evidence, which means that the evidence must compel a reasonable fact finder to make the conclusions that Petitioner's advocating for. He's failed to meet that standard with the evidence that he points to in his brief and todayed argument. Overall, his claim is speculative. First, he was never harmed in Mexico during the many times that he was there. He's provided no evidence that would compel a conclusion that his father or the cartel or anyone is aware of these reports that he's made, the letters that he's written, the articles that he's published. Mr. George, is counsel correct that the letter published in the newspaper was published after Mr. Hernandez had been in Mexico? I am not certain of the date, Your Honor, in terms of the timing of everything. I can't speak to that directly. I know that letter to the editor is in the records, and I believe it does have a date on it, so we could look at it. I just don't have that information in front of me. What is your understanding about whether that article was in the original evidence before the IJ or submitted later? I believe in terms of that timing, I believe it came after the immigration judge's decision, and so that is what the board is referring to in its decision when it's talking about the motion to remand and it being simply cumulative of the other evidence in the record, or first the immigration judge not having jurisdiction to consider it. So that's how we are interpreting that language. But you don't know whether the BIA was correct that it hadn't, I mean, to treat it as new rather than as evidence that was already before the IJ? From what I can tell from the record, it was submitted after the immigration judge's decision, so it would be new. It would be akin to a motion to reopen, and so it would have to meet the material not previously available type of standard. I don't know that's precisely how the board viewed it, or why that. But they didn't treat it as a motion to reopen, and he didn't file a motion to reopen. That's right. He filed a motion to reconsider. It looked to me like when the board looked at the record, they saw this post-IJ decision motion to reopen was in the record. They just looked at it and they said, well, this is all new. We're gonna sort of look at this as a motion to remand and deny it with their explanation. Right, and it would be the same context, motion to reopen or motion to remand before the board. Well, but a motion, well, they're a little bit different. I believe before the board, they would be the same standard. They would be the same? I think even the court has some law on that. I'm not positive. But in terms of before the board, I believe they would be the same standard because it wouldn't make sense to have a motion to reopen at that stage, I think as Your Honor is pointing out, and so it becomes a motion to remand, but the same principles would apply in terms of not previously available material and so on. And regardless of any of that standard, the letter is simply cumulative of the other information that petitioner, the letters that he sent to the Mexican officials, the- Well, but the article would be public. So I think it's the article that's the issue. And the article, if it was really published publicly, has more basis to think the father would know about it than these reports that there isn't really any reason to think they ever were public. Well, that's, I mean, it has the same evidentiary failure of what evidence do we have that the father has any knowledge of that letter? There are many- You mean article, right? Oh, excuse me, the article, yes, Your Honor. The one in the paper, in the newspaper. I'm sure there are many newspapers in Mexico. Where's the evidence that the father or cartel members or anyone has seen this particular newspaper that has circulation in the relevant areas? Say if I publish something in the Washington Post, that doesn't mean Your Honor has seen it as someone who lives in California or something like that. There's just no evidence in this record that anyone has seen that article, much less the entire evidentiary chain that would be necessary that, one, that the father or the cartel has seen it. B, they would now consider Petitioner a snitch or an informant. C, that they would seek him out on that basis. D, that they would be able to apprehend him. E, that they would harm him. And then F, that that would rise to the level of torture. That's the entire speculative nature of this claim that the Board is getting into with regard to its decision. And all of the evidence has that same evidentiary failure of not compelling the conclusions that Petitioner wants to draw. Even Petitioner today said the Petitioner believes these things are going to happen. That doesn't mean that the agency is compelled to accept his belief of what may happen. There's a lot of generic, general evidence of, I wrote these letters, I wrote this article, my father has these connections to these random ICE agents, but where is the connection that makes us all compelled to find that conclusion, that all of the links in that chain, that there's the awareness, that there's now going to be the targeting, that there's going to be harm, that it's going to rise to the level of torture. Even looking at Dr. Shirk's testimony, he said that Petitioner might be considered a snitch. He didn't even say that he would be considered a snitch. So not even that compels a conclusion that the father or the cartel or whoever else would consider him a snitch. It's simply an opinion, and the agency isn't compelled to accept that opinion when the expert himself isn't even using strong language to provide that opinion. Let me ask you, so when the board noticed, I guess this motion, was there a motion before, what was it called, the motion to reopen before the IJ, or motion? The motion to reconsider, I believe. Before the IJ, before the IJ? It was a motion to reconsider before the IJ. With this article? Yes, sir. Okay, so the board says, well, we're going to treat that as a, for us, the IJ couldn't do anything with it because it had no jurisdiction. We see it, so we're just going to treat it as a motion to remand and deny.  Yes. Did he argue, did the blue briefs raise that? The petitioner is not, as Judge Friedland has already pointed out, none of this appears in petitioner's brief. He's never advanced any sort of argument that. Argued that having done this, the BIA abused its discretion because this was really significant. Right, that would be the standard that would apply. The standard of review would be abuse of discretion because it would have the same standard of review as a motion to reopen, but he's never made that argument. He's never even really addressed the newspaper article at all in his brief. Okay. And so to that effect, he's waived that argument by not presenting it. Okay. But turning to the petitioner's own brief, it recognizes the speculative nature of his claim. He uses such language as when all the evidence is properly weighed, he gets cat protection. He says it's unclear how readily this information is available to fall into the wrong hands. He says if it becomes public knowledge that Hernandez shared information about cartel-related illicit activities, Hernandez's life would be at risk. Even his own brief recognizes the speculative nature of his claim and that while it's certainly possible to draw the conclusions that he wants, this record doesn't compel the agency to draw those conclusions. Turning to the particularly serious crime issue, he's failed to exhaust that issue to the board. Even if he did exhaust that issue, the immigration judge, at least to the extent that his argument is a legal one and not a factual one about reweighing the factors for particularly serious crime, the immigration judge listed the correct factors and then applied them to the facts and circumstances of the case. Of this case and conducted a case-by-case inquiry. I thought he made an argument that he had exhausted this issue. He did, Your Honor. Because of the two sentences in the board's decision. Right, the board does say we affirm the immigration judge's decision and then the next sentence says, we find that you failed to raise this issue and we deem it waived. And so there is some support, at least under this court's case law, that that would be exhausted. We certainly say, much like sort of affirming without opinion that that mere statement doesn't exhaust the issue, he still needed to raise that issue to the board and he concedes in his brief that he did not raise that issue to the board, other than his most recent 20-AJ where he tries to change his position on that. But even if he did exhaust it, the immigration judge correctly applied the particularly serious crime test here. And to the extent that his argument is about the weighing of the factors and what should come into play and all that, that would be an issue that the court would not have jurisdiction because it would be a factual issue and not a legal issue that would survive the criminal alien bar. Turning to the state-created danger claim, to the extent it applies, it's our position that the cap protection analysis covers it entirely and the court shouldn't even reach it. And to the extent any sort of exhaustion doctrine would apply to it, we would advocate that that should apply as well. But to the extent neither of those apply, this case doesn't reach the level of Morgan, much less the level of Wang. The level of treatment here is nowhere near the shocking the constants level that occurred in Wang. And in Morgan where the court said the doctrine did not apply, there was no reprehensible conduct or deliberate indifference by the government. That is much more akin to the case here where as far as I can tell from the record, petitioner requested the contact with the DHS agents and provided that information. This wasn't an ongoing criminal prosecution where the government requested his presence or requested his testimony, put him in a worse situation than he would have been in. He's in no different position. And so at best, Morgan is more akin and should apply and the court should not apply the state created danger doctrine here. Okay. Thank you. Thank you, counsel. Let's see, you had two minutes and 10 seconds for rebuttal. Thank you, your honors. I just wanted to emphasize the point that Hernandez here is a vulnerable informant. He has chosen to not follow his father's path of criminality and instead chosen to adhere to a law abiding life and try to undo some of the damage that he's done by publicly denouncing him. To send him back now would run contrary to what we believe about justice. But moving back to the law, we do believe that the IJ had jurisdiction to consider the pro se filing because it was filed before the decision was rendered. We believe that that- Can I interrupt you for just a second? What evidence was there that the Mexican government would acquiesce in any torture by the father's Arellano cartel? Yes. So as far as acquiescence, one of the things that can be shown through either direct torture or it can be shown through willful blindness. Here there are police officers in the employ of his father who would be willfully blind to the murder of him or even murder him themselves possibly. Hernandez believes that one of the police officers who was working for his father ordered a hit on his friend and business partner. So that just goes to show that the police in Tijuana at least and beyond cannot necessarily be trusted. This is corroborated by the country reports which state that there's widespread violence. Are we compelled to find that as against the BIA's determination at page three that there is insufficient evidence in the record to establish that public officials or persons acting in an official capacity would likely acquiesce in or exhibit willful blindness toward any torture? We do believe it's compelled and we believe so because Hernandez has established that his father has police officers working for him. Dr. Shirk's testimony discussed in depth the local issues with local government and corruption and the local police forces in particular. There are many points raised to that effect and I see my time's running out. But we believe that it compels that Hernandez, that the police forces would have acquiesced in his torture. Thank you. Thank you. Thank you very much. And just on behalf of the court, we extend our many thanks to school for willingness to participate in our pro bono program and the clinical program at Davis. Thank you so much. And thank you for the government for your arguments this morning.
judges: Paez, Bea, Friedland